UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| **NORMA JEAN VERSMESSE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:13 CV 171 |
| | ) | |
| **AT&T MOBILITY LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the court on defendant AT&T Mobility, LLC's motion to dismiss plaintiff Norma Jean Versmesse's complaint and compel arbitration. (DE # 10.) Plaintiff has filed a response (DE # 13), and defendant has filed a reply (DE # 14). For the following reasons, that motion is granted.

**I.**     **Legal Standard**

Defendant AT&T Mobility, LLC ("defendant" or "AT&T Mobility") has moved to dismiss plaintiff's complaint and compel arbitration under section 4 of the Federal Arbitration Act ("FAA"). (DE # 10 at 1.) The Federal Arbitration Act ("FAA") "was originally enacted 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.'" *Kawasaki Heavy Indus. v. Bombardier Rec. Prods.,* 660 F.3d 988, 995 (7th Cir. 2011) (quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991)). Furthermore, the FAA demonstrates that Congress supports "a liberal federal policy

favoring arbitration agreements." *Moses H. Cone Mem. Hosp. v. Mercury Contr. Corp.,* 460 U.S. 1, 24 (1983).

Section 4 of the FAA allows a party to a written arbitration agreement to request an order from a federal district court compelling the parties to arbitrate. *See* 9 U.S.C. § 4. The court may look beyond the pleadings when reviewing a motion to compel arbitration. *Armbrister v. Pushpin Holdings, LLC,* 896 F. Supp. 2d 746, 753 n. 3 (N.D. Ill. 2012).

II.     **Background and Facts**

The court need not delve too deeply into the factual background supporting plaintiff's claims, as defendant's current motion does not concern the merits of those claims. Plaintiff worked for defendant as a business account executive from October 1, 2008 to March 14, 2012, the date plaintiff's employment was terminated. (DE # 1 at 1-4.) Plaintiff alleges that her termination violated Title VII, the Americans with Disabilities Act, and the Family Medical Leave Act, and brings several other claims against defendant. (*Id.* at 5-7.)

Defendant, however, contends that plaintiff agreed to arbitrate any claim she had against defendant. (DE # 10 at 1.) Defendant, therefore, argues that plaintiff's case must be dismissed and that plaintiff must be compelled to arbitrate her claims. (*Id.*) In support of its argument, defendant has attached the declarations of two employees and one outside consultant.

2

Kathleen Matyola, who was employed by defendant as a Corporate Compliance Training Program Manager from January 2008 to March 2012, provides the first declaration. (DE # 11-1.) During late 2011 and early 2012, Matyola was involved in implementing an arbitration program at AT&T Mobility, which included distributing notifications regarding the arbitration program to other employees. (*Id.* at 1-2.) During the week before November 30, 2011, Matyola designed and sent an email (*see id.* at 5) to all of defendant's management-based employees in the United States informing them of the creation of an arbitration program, and explaining what each employee needed to do to opt out. (*Id.* at 2-3.)

The text of that email stated:

**Action Required: Notice Regarding Arbitration Agreement**

AT&T has created an alternative process for resolving disputes between the company and employees. Under this process, employees and the company would use independent, third-party arbitration rather than courts or juries to resolve legal disputes. Arbitration is more informal than a lawsuit in court, and may be faster.

The decision on whether or not to participate is yours to make. To help you make your decision, **it is very important for you to review the Management Arbitration Agreement linked to this email.** It provides important information on the process and the types of disputes that are covered by the Agreement.

Again, the decision is entirely up to you. To give you time to consider your decision, the company has established a deadline of no later than 11:59 p.m. Central Standard Time on Monday, Feb. 6, 2012 to opt out – that is, decline to participate in the arbitration process – using the instructions below.

If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement. This means that you and AT&T are giving up the right to a court or jury trial on claims covered by the

agreement.

**Instructions for "Opting Out" of the Agreement:**

To opt out of the agreement, after you open the attached document, follow the link provided there to the site where you will be able electronically register your decision to opt out.

Remember, the decision is yours. There are no adverse consequences for anyone opting out of the Management Arbitration Agreement. If, contrary to this assurance, you believe you have experienced any pressure or retaliation in connection with your decision, please contact the AT&T Hotline (888-871-2622).

If you have any question about the Agreement, please contact OneStop (Dial 1-888-722-1787, then speak "Employee Service Hotline").

**Important: February 6, 2012 is the deadline to act if you do not wish to resolve disputes through arbitration.**

(DE # 11-1 at 5 (emphasis in original).)

The email also included a link to the full text of the arbitration agreement. (*Id.* at 2.) The page with the full text of the arbitration agreement also contained a button marked "Review Complete" that the viewer was asked to click to indicate that he or she had seen the arbitration agreement.[1] (*Id.*) After sending out the original email, Matyola sent out two additional emails to those employees who had not yet clicked the arbitration agreement acknowledgment button. (*Id.* at 3.)

The next declaration defendant has included with its motion to dismiss is from Jeremy Dunlap, who is an Applied Technical Support Specialist at Accenture, Inc. (DE # 11-2 at 1.) During Dunlap's tenure with Accenture, Accenture provided

---

[1] The text of the arbitration agreement is listed in Docket Entry # 11-1 at 7-10.

4

defendant with consulting services "including technical support for various computer systems and software applications utilized by AT&T." (*Id.*) Dunlap is familiar with the email application that defendant used to send the arbitration agreement emails to its employees during late 2011 and early 2012. (*Id.* at 1-2.)

Dunlap was able to confirm through a search that three emails with the subject heading "Action Required: Arbitration Agreement" and contents identical to the email quoted above were sent to recipient nv2494@us.att.com on December 5, 2011 at 4:03:47 a.m., on December 15, 2011 at 4:03:42 a.m., and on January 18, 2012 at 12:03:00 a.m. (*Id.* at 3-4.) Dunlap was also able to confirm that someone logged in with the username nv2494 accessed the Arbitration Agreement email, and the accompanying page containing the actual agreement, on December 5, 2011 at 7:14:32 a.m. (Pacific Standard Time).[2] (*Id.* at 4; *see also id.* at 14.)

---

[2] In her response brief, plaintiff argues that Dunlap's testimony that the records indicating that someone using the username nv2494 viewed the arbitration agreement email *and* the arbitration agreement link constitute hearsay because "[i]t is not at all clear how the report [cited by Dunlap] could reference both, as it only shows one viewing, or how Dunlap could possibly have personal knowledge as to whether the person who accessed the e-mail clicked on the link contained therein, and whether the link successfully caused the proposed agreement to open the document containing the proposed agreement." (DE # 13 at 6 n.1)

Plaintiff does not explain how Dunlap's testimony on this matter would constitute *hearsay*, "an out-of-court statement offered by a party 'to prove the truth of the matter asserted.'" *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 774 (7th Cir. 2012) (quoting FED. R. EVID. 801(c)(2)). Plaintiff's real argument with regard to this statement appears to be that Dunlap cannot have personal knowledge that this particular record reveals that the person logged in with plaintiff's username viewed both the email and the accompanying arbitration link. The court need not resolve this dispute, however, because even if plaintiff is correct, she does not contest that the arbitration email itself conveyed the material terms of the arbitration agreement.

5

The final declaration defendant has included with its motion to dismiss is from Heather Hughes, who has been a sales manager with defendant since 2005. (DE # 11-3.) From January 1, 2011 until February 6, 2012, Hughes was plaintiff's direct supervisor. (*Id.* at 1.) During that time, plaintiff's AT&T computer system username was nv2494, and her AT&T email address was nv2494@us.att.com. (*Id.* at 2.) Hughes required plaintiff to monitor and respond to any emails plaintiff received at her AT&T email address. (*Id.*) Additionally, plaintiff was required to attend an annual training session on defendant's Code of Business Conduct, which included training on defendant's policy forbidding its employees to share their AT&T computer system passwords. (*Id.*)

Hughes also held a staff meeting on December 6, 2011, to discuss the new arbitration program. (*Id.*) Hughes believes that plaintiff was present at that meeting, because if one of her employees misses a staff meeting, Hughes will send a follow-up email with that employee asking for an explanation for why they did not attend the meeting, and Hughes has no record of sending a follow-up email to plaintiff regarding the December 6 arbitration staff meeting. (*Id.*)

Plaintiff has attached an affidavit to her response brief (DE # 13-1), in which she testifies that she never had any knowledge of, or was ever made aware of, the AT&T arbitration policy.[3] Additionally, she testifies that she was at the doctor on December 6, 2011, and was therefore not at the staff meeting regarding the arbitration agreement

---

[3] Defendant contests the admissibility of the statements contained in plaintiff's affidavit. (DE # 14 at 4-5.) Because defendant's motion will be granted, the court need not address this argument.

that day. (*Id.* at 1.) Plaintiff does not recall ever receiving a follow-up email from Hughes about missing the staff meeting. (*Id.*)

Plaintiff further testifies that any policy forbidding employees from sharing their passwords was not enforced. (*Id.* at 1.) Several of plaintiff's managers, including Hughes, had plaintiff's AT&T computer system password. (*Id.* at 1-2.) Plaintiff states that she did not ever receive an email regarding the arbitration program, and in fact, often had problems accessing her work email. (*Id.* at 2.) Plaintiff had problems accessing her work email from December 5, 2011 to January 18, 2012. (*Id.*)

### III. Analysis

"Under the Federal Arbitration Act, arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 690 (7th Cir. 2005). The second and third elements are not at issue in this case. The agreement itself is quite broad (*see* DE # 11-1 at 7 ("This agreement applies to any claim that you may have against any of the following: (1) any AT&T company . . . ."), and plaintiff does not appear to contend that her claims are not covered by the terms of the agreement. Instead, plaintiff's argument is that there was no arbitration agreement in this case (DE # 13 at 4), and the court will therefore confine its analysis to that issue.

Federal courts rely on state contract law to determine whether an arbitration agreement constitutes a valid contract. *See Faulkenberg v. CB Tax Franchise Systems, LP*,

7

637 F.3d 801, 809 (7th Cir. 2011). "Indiana courts apply ordinary contract principles to arbitration agreements." *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997). The required elements to form a valid contract in Indiana are an offer, an acceptance, consideration, and a manifestation of mutual assent. *In re Paternity of M.F.*, 938 N.E.2d 1256, 1259 (Ind. Ct. App. 2010). "Under federal procedural law, the existence of a contract is a mixed question of law and fact that is subject to clear error review." *Winforge, Inc. v. Coachmen Industries, Inc.*, 691 F.3d 856, 868 (7th Cir. 2012).

In its motion, defendant argues that the parties had a valid arbitration agreement and that the court should compel the parties to arbitrate plaintiff's claims. (DE # 11 at 4-5.) In response, plaintiff argues that there are disputed issues of fact regarding the existence of an arbitration agreement, and therefore, requests that the issue be submitted to a jury for determination. (DE # 13 at 3.)

"The party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002). "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* "In deciding whether the party opposing summary judgment (and by analogy compelled arbitration) has identified a genuine issue of material fact for trial, the evidence of the

non-movant is to be believed and all justifiable inferences are to be drawn in his favor."
*Id.* (citations and quotations omitted).

The question therefore, is not whether plaintiff's denial of receiving the arbitration email is sufficient to avoid arbitration, but rather, "whether [plaintiff has] produced sufficient evidence to raise a factual issue concerning whether she and [defendant] are bound by a contract to arbitrate." *Tinder*, 305 F.3d at 735. Plaintiff argues that because she has denied that she ever received the arbitration email, there can be no valid arbitration agreement between the parties. (DE # 13 at 4-9.)

In *Tinder v. Pinkerton Security*, the defendant employer put a notice in each of its employee's paychecks explaining that any and all employees employed with the company after a certain date would be required to resolve any disputes against the company through arbitration. 305 F.3d at 731-32. The plaintiff in *Tinder* filed suit in federal court, arguing that she should not be bound by the arbitration agreement because she did not receive the arbitration notice in her paycheck and did not know about the arbitration program until after she filed her suit against defendant. *Id.* at 735.

The Seventh Circuit rejected the plaintiff's argument. Specifically, the court concluded that plaintiff had failed to raise a genuine issue of material fact, as her only evidence that she did not receive the notice "was her own affidavit in which she avers that she 'does not recall seeing or reviewing the Arbitration Program brochure that Defendant alleges was included with her payroll check . . . .'" *Id.* at 735-36. The court reasoned that the plaintiff's testimony that she did not remember seeing the notice was

9

insufficient to create an issue of fact in light of the defendant's evidence that the notice "was definitely sent and presumably received with her paycheck." *Id.* at 736.

Like the plaintiff in *Tinder*, the only evidence plaintiff in this case has submitted in support of her position that she never saw the arbitration email or had any knowledge of the arbitration agreement is her own statement that she never received any email regarding the arbitration agreement. (DE # 13-1 at 2.) Plaintiff, however, does not appear to dispute that the arbitration email was in fact sent to and viewed by someone using her company email account, as evidenced by the records provided by defendant.[4] (DE # 11-2 at 14.)

Plaintiff's arguments and evidence are not sufficient "to raise a factual issue concerning whether she and [defendant] are bound by a contract to arbitrate." *Tinder*, 305 F.3d at 735. *Tinder* counsels that to create an issue of fact on the issue of formation of an arbitration agreement, a plaintiff must do more than simply provide evidence, in the form of her own statement, that she did not see the arbitration agreement notice, when faced with undisputed evidence that the notice was sent to the plaintiff. *Id.* at 735-36; *see also Mecherle v. Trugreen, Inc.*, No. 12 C 1617, 2012 WL 4097221, at *4 (N.D. Ill. Sept. 14, 2012) ("[A]lthough [the plaintiff] claims that '[t]o the best of [his] memory, [he] did not receive any information at that time about having to resolve any complaints . . . through

---

[4] Plaintiff argues that the only reasonable inference from these facts is that "that someone other than Plaintiff used the AT&T username 'nv2464' to access the e-mail notice." (DE # 13 at 5.)

any arbitration process[,]' the evidence clearly shows that [plaintiff] did have access to this information.").

In this case, there is no dispute that the arbitration email was sent to plaintiff's company email and viewed by someone accessing her account using her username and password. Therefore, under *Tinder*, to create a genuine issue of material fact on the issue of the formation of the arbitration agreement, plaintiff was required to come forward with some evidence, other than her own statement that she did not see the email sent to her account, that would raise an issue of fact concerning the formation of the arbitration agreement. Plaintiff has not done that here, and therefore, has failed to create a genuine issue of material fact on issue of formation of the arbitration agreement.

Plaintiff makes several other arguments in an attempt to call into question the arbitration agreement. First, plaintiff argues that there was no offer because plaintiff never saw the arbitration email. (DE # 13 at 4-9.) As discussed in more detail above, however, plaintiff has not raised a genuine issue of material fact on whether the parties are bound by a contract to arbitrate, and plaintiff's argument fails.

Next, plaintiff argues that she never accepted the arbitration agreement because neither party signed the agreement. (DE # 13 at 6.) In response, defendant argues that plaintiff accepted the agreement by failing to opt out by the required deadline. (DE # 11 at 5.)

Under Indiana law, "the validity of a contract is not dependent upon the signature of the parties, unless such is made a condition of the agreement. . . . However,

some form of assent to the terms of the contract is necessary." *Int'l Creative Mgmt., Inc. v. D & R Entm't Co.,* 670 N.E.2d 1305, 1312 (Ind. Ct. App. 1996) (citation omitted); *see also Kreimer v. Delta Faucet Co.*, No. IP99-1507-C-TG, 2000 WL 962817, at *3 (S.D. Ind. June 2, 2000).[5] In this case, nothing in the arbitration agreement required that the agreement be signed. (DE # 11-1 at 7.) Both the arbitration email (DE # 11-2 at 7) and the arbitration agreement (*id.* at 9) were very clear that any employee that wanted to opt out could do so, but if the employee did not opt out by the deadline, they would be bound by the arbitration agreement. Plaintiff did not opt out of the agreement by the deadline (DE # 11 at 3),[6] and therefore assented to the terms of the agreement. *D & R Entm't Co.,* 670 N.E.2d at 1312; *see also Buschman v. ADS Corp.*, 782 N.E.2d 423, 428 (Ind. Ct. App. 2003) ("Assent to the terms of a contract may be expressed by acts which manifest acceptance.").

Plaintiff also argues that the arbitration agreement should not be enforced because there was no consideration. (DE # 13 at 8.) In response, defendant argues that the promise by both plaintiff and defendant to give up their right to a jury trial constitutes consideration. (DE # 11 at 7.)

---

[5] Additionally, the FAA does not require arbitration agreements to be signed. *See* 9 U.S.C. § 4; *see also Tinder*, 305 F.3d at 736.

[6] The parties have failed to direct the court to evidence in the record indicating that plaintiff failed to opt out of the agreement, but neither party disputes this point, and the court will treat it as undisputed.

12

Under Indiana law, a mutual promise to arbitrate future disputes constitutes consideration. *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1131 (7th Cir. 1997) ("Often, consideration for one party's promise to arbitrate is the other party's promise to do the same."); *see also Jenks v. Workman*, No. IP99-1389, 2000 WL 962821, at *5 (S.D. Ind. 2000) ("[I]n exchange for [plaintiff's] promise to submit her legal claims to arbitration, [defendant] also agreed to do the same. . . . Thus, consideration can also be found by way of [defendant's] agreement to be bound by the arbitrator's decision . . . ."); *Kreimer*, 2000 WL 962817, at *3 ("[C]onsideration can also be found by way of [defendant's] agreement to be bound by the arbitrator's decision, thereby waiving its right to seek judicial determination of a raised claim.").

In this case, both plaintiff and defendant agreed to be bound by the arbitrator's decision. (*See* DE # 11-1 at 5 ("Under [the arbitration] process, employees and the company would use independent, third-party arbitration rather than courts or juries to resolve legal disputes. . . . This means that you and AT&T are giving up the right to a court or jury trial on claims covered by the agreement."); DE # 11-1 at 7 ("Under this Agreement, you and the AT&T company that employs you . . . agree that any dispute to which this Agreement applies will be decided by final and binding arbitration instead of court litigation.").) Thus, consideration for the arbitration agreement is found in both parties' agreement to be bound by an arbitrator's decision.

In sum, plaintiff has failed to create a genuine issue of material fact regarding the formation of the arbitration agreement, and there is no dispute that the agreement

13

covers plaintiff's claims or that plaintiff has refused to arbitrate her claims. Therefore, defendant's motion to dismiss and compel arbitration will be granted. *Zurich Am. Ins. Co.*, 417 F.3d at 690; *see also Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1008-09 (N.D. Ill. 2013) (dismissal appropriate where all claims are subject to arbitration).

IV.   **Other Motions**

Defendant has moved for a hearing on its motion to compel arbitration. (DE # 15.) That motion will be denied as moot. Additionally, both parties moved to file additional briefs after defendant's reply brief was filed. (DE ## 17, 18.) The court considered those additional briefs in reaching its decision, and those motions will therefore be granted. Finally, plaintiff has filed a motion for a ruling on defendant's motion to compel (DE # 20). That motion will be denied as moot.

V.   **Conclusion**

For the foregoing reasons, defendant's motion to compel arbitration (DE # 10) is **GRANTED**. Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**, and the parties are ordered to proceed to arbitration pursuant to the arbitration agreement. Defendant's motion for a hearing (DE # 15) and plaintiff's motion for a ruling on defendant's motion to compel (DE # 20) are both **DENIED AS MOOT**. Plaintiff and defendant's motions to file additional briefs are **GRANTED**. (DE ## 17, 18.)

            **SO ORDERED.**

Date: March 4, 2014

            s/James T. Moody
            JUDGE JAMES T. MOODY
            UNITED STATES DISTRICT COURT